MORRIS SHEPPARD ARNOLD, Circuit Judge.
The Shakopee Mdewakanton Sioux (Dakota) Community (“Community”) appeals the district court’s[1] refusal to declare effective certain proposed amendments to the Community’s constitution. We affirm.
I.
To amend its constitution, an Indian tribe must follow the procedures set out in the Indian Reorganization Act, 25 U.S.C. §§ 461-479a-l (“IRA”), and its associated regulations, 25 C.F.R. §§ 81.1-81.24. The tribal government must first request the Secretary of the Interior to call and conduct an election. 25 U.S.C. § 476(e)(1). At least twenty days before the election, an election board consisting of one Bureau of Indian Affairs officer and two members of the tribal government is required to post a list of registered voters, and the election board must resolve any challenges to the list’s composition at least ten days before the election. 25 C.F.R. §§ 81.12, 81.13.
Although the regulations state that the election board’s eligibility determinations “shall be final,” 25 C.F.R. § 81.13, they also provide that “[a]ny qualified voter ... may challenge the election results by filing with the Secretary ... the grounds for the challenge,” along with substantiating evidence, within three days of the posting of the election results. 25 C.F.R. § 81.22. The regulation does not enumerate permissible grounds for challenges, and the Secretary may order a new election if he or she decides that the objections are valid. Id. The regulations contain no provisions for challenging the election board’s resolution of eligibility disputes before the election.
The amendments voted upon will become effective only if two events occur: they must be “ratified by a majority vote of the adult members of the tribe,” 25 U.S.C. § 476(a)(1), and the Secretary must approve them, 25 U.S.C. § 476(a)(2). The Secretary may review amendments that have been ratified by a majority vote only to ensure that they comply with applicable federal law. 25 U.S.C. § 476(d)(1). If they do not, the Secretary may disapprove them within forty-five days of the election. Id. If the Secretary neither disapproves nor approves them within that time, the amendments are deemed approved and become effective. 25 U.S.C. § 476(d)(2).
On April 19,1995, the Secretary conducted an election so that the Community eould vote on amendments to that portion of its constitution that sets out the qualifications for membership in the tribe. Twenty-one days before the election, the election board posted a registered voter list containing one hundred eleven námes. In response to objections, the board determined that forty-four people were not eligible to vote, removed them from the list, and posted a revised list twelve days before the election. The amendments passed by a vote of thirty-five to twenty-seven, and the election board certified the results the same day as the election. Pursuant to 25 C.F.R. § 81.22, several Community members filed challenges to forty eligibility determinations, alleging that eighteen qualified members were prevented from voting and that twenty-two unqualified individuals were allowed to vote.
Forty-three days after the election, the Secretary issued a decision letter in response to these challenges, stating that he could not approve the election’s results because the possible errors in the voter-eligibility determinations raised substantial doubt regarding *-914 the election’s fundamental integrity and fairness. The Secretary deferred to the election board’s decision with respect to seventeen of the challenges, but ordered an administrative law judge to resolve those that remained. These challenges concerned complicated blood quantum determinations, and the Secretary had in his possession documents with conflicting information that were not reviewed by the election board. The Secretary stated that there would be a new election after the administrative law judge’s resolution of those challenges.
The Community sued the Secretary for alleged violations of both the IRA and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, seeking an order declaring the Secretary’s actions unlawful, declaring the amendments effective, enjoining the administrative law judge’s resolution of the challenges, and enjoining the second election. The district court granted summary judgment to the defendants.
II.
On appeal, the Community contends that the district court erred in not declaring the amended constitution approved as a matter of law under 25 U.S.C. § 476(d)(2) because the Secretary neither approved it nor disapproved it within forty-five days. The Community also contends that the district court erred in. holding that the Secretary had discretion to review eligibility disputes.
A.
Although the IRA states with clarity when and why the Secretary may reject election results that have been adopted by the tribe (that is, ratified by a majority of the tribe’s adult members who voted), it is silent about what the Secretary can do when it is unclear whether the results have, in fact, been ratified by a majority of the voting members. We must therefore defer to a reasonable interpretation of the statute by the Secretary. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).
The Secretary interprets the statute to allow the rejection of election results when, as here, the Secretary is unable to determine whether an election has resulted in ratification by a majority of the voting members of the tribe as required by 25 U.S.C. § 476(a)(1). We believe that this interpretation is reasonable. Applying the statute’s strict substantive and procedural limitations on the Secretary’s ability to reject election results for which majority support exists to circumstances in which that support is in doubt might well force the Secretary to declare amendments effective for which majority support does not exist. Such a result would be inconsistent with the IRA’s broad purpose, which charges the Secretary with supervising these elections and ensuring their fundamental integrity. The Secretary’s interpretation of the limitations contained in 25 U.S.C. § 476 does not give him or her carte blanche to interfere with tribal elections; the Secretary may still disapprove elections for substantive reasons only if the proposals are contrary to federal law.
The Community’s suggestion that we should be guided by that canon of statutoiy construction that resolves statutory ambiguities in the Indians’ favor, see Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112-13, 48 L.Ed.2d 710 (1976), does not help their case. The Community neither explains how the canon applies when Indians are on all sides of an issue, as here, nor demonstrates how ensuring that tribal election results accurately reflect the eligible voters’ will is not in the Indians’ favor.
The Secretary’s decision letter notified the Community that substantial doubt existed regarding the election’s fundamental integrity and fairness, thus making it unclear whether the amendments had, in fact, been ratified by a majority of the voting members of the tribe. Because the Secretary’s reasonable interpretation of the statute renders its strict limitations on when and why the Secretary may reject election results inapplicable in that circumstance, the district court did not err in refusing to declare the amendments approved as a matter of law.
*-913 B.
The Community interprets the word “final” in 25 C.F.R. § 81.13 to mean “final for the Department,” thus precluding any Secretarial review of the election board’s eligibility determinations, and the Community contends that we must reject any other interpretation as plainly erroneous. The Community argues alternatively that any ambiguities in the regulation must be resolved in its favor.
We note at the outset that elsewhere in the same regulations, when the Secretary intends a decision to be final for the Department of the Interior, the phrase “final for the Department” often appears. See, e.g., 25 C.F.R. § 83.11(a)(2). Whether “final” also means “final for the Department” or simply “final” for purposes of conducting an election is ambiguous. Because either interpretation will therefore not contradict the regulations’ plain language, we must give the Secretary’s interpretation of the Department’s own regulations controlling weight unless that interpretation is plainly erroneous. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 510-12, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994); Shalala v. St. Paul-Ramsey Medical Center, 50 F.3d 522, 528 (8th Cir.1995).
The Secretary interprets 25 C.F.R. § 81.13 to mean that the election board’s decision is final as to who casts a ballot but not as to whether the balloting amounts to a valid election by the Community’s qualified voters, thus allowing the Secretary to invalidate election results under 25 C.F.R. § 81.22 due to irregularities in voter-eligibility determinations. The Secretary offers three rationales in support of this interpretation.
First, the Secretary argues that since Secretarial elections are federal elections implicating federal rights, see Cheyenne River Sioux Tribe v. Andrus, 566 F.2d 1085, 1088-89 (8th Cir.1977), cert. denied, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978), federal protection of those rights is appropriate. The regulations allow the election board to deny eligibility to a prospective voter even when that individual has had no notice of, and opportunity to respond to, the objection to his or her eligibility. Because the regulations contain no provisions for challenging the election board’s resolution of eligibility disputes before the election, precluding the Secretary from ever reviewing eligibility determinations, the argument runs, would raise serious due process concerns.
The Secretary also maintains that allowing him to review eligibility determinations after the election helps ensure that governing documents accurately reflect the Community’s will, in accordance with the IRA’s purpose. Lastly, the Secretary notes that 25 C.F.R. § 81.22 does not limit the grounds on which he can conclude that a new election is necessary; it states that elections can be challenged on any ground for which substantiating evidence exists. The Secretary thus argues that interpreting § 81.22 to allow challenges to all procedural irregularities except voter eligibility would undermine the IRA’s purpose.
We hold that the Secretary’s interpretation of the interaction between § 81.13 and § 81.22 is not plainly erroneous. Although we believe that the election board’s composition was a carefully constructed regulatory compromise between federal authority and tribal sovereignty, and that perhaps a more reasonable interpretation of § 81.13 would be that it precludes Secretarial review of the board’s eligibility determinations, we may not substitute our interpretation for that of the Secretary. See Miller v. United States, 65 F.3d 687, 689 (8th Cir.1995). The district court therefore did not err in holding that the Secretary had discretion to review eligibility disputes.
III.
Because the Secretary’s interpretation of the IRA and its implementing regulations is reasonable, we affirm the district court’s grant of summary judgment to the defendants.

. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.