DIANE P. WOOD, Circuit Judge.
 

 Indian tribes enjoy important attributes of sovereignty, but in some key respects they are under the control of the federal government. Such is the case with elections to adopt, revoke, or amend tribal constitutions. Although these elections lay the very foundation for tribal self-governance, they must be called, held, and approved by the United States Secretary of the Interior. 25 U.S.C. § 476.
 

 In February 1992, the Secretary conducted such an election to ratify two amendments to the tribal constitution of the Lac Courte Oreilles (“LCO”) Band of Lake Superior Chippewa Indians. Both amendments were approved overwhelmingly, and initial challenges to the results were unsuccessful. Later, however, at the instigation of the losing faction, federal officials overturned the election results. That led to this lawsuit by four LCO members and ancillary members who supported the amendments. Their complaint contested the legality of the federal officials’ actions under the Indian Reorganization Act (“IRA”), 25 U.S.C. § 461
 
 et seq.,
 
 and the judicial review portion of the Administrative Procedure Act (“APA”), 5 U.S.C. § 701
 
 et seq.
 
 The district court, believing that the tribal government was a party without whose presence the case could not go forward under the standards of Federal Rule of Civil Procedure 19, dismissed the action when the tribal governing board refused to join the suit voluntarily and asserted its sovereign immunity to ward off involuntary joinder. We find, to the contrary, that Rule 19 does not compel the governing board’s presence, and we therefore reverse.
 

 I
 

 In the late 1980s, some LCO members began considering possible amendments to their tribal constitution that would alter the standards for tribal membership as well as the structure of tribal government. In 1988, plaintiff Sandra Thomas (an LCO member who lives on the reservation, with at least %> LCO blood) was named chairperson of a committee formed to explore these issues. This committee eventually drafted four proposals, which were circulated among the LCO membership and sent to the Bureau of Indian Affairs (“BIA”), the responsible division within the Department of the Interior, to begin the amendment ratification process.
 

 The procedures for calling and approving an election to amend a tribal constitution are codified at 25 U.S.C. § 476 and are relatively straightforward. Once the Secretary receives a qualifying request to hold an election to ratify proposed amendments, the Secretary reviews the legality of the proposed amendments and calls an election within 90 days. 25 U.S.C. § 476(c)(1)(B); 25 C.F.r'. § 81.5(d). The election results are not binding until the Secretary approves them, and any qualified voter may contest the results to the Secretary within three days of the election. 25 C.F.R. § 81.22. The Secretary has 45 days to resolve these election contests, conduct an independent review, and approve or disapprove the election. 25 U.S.C. § 476(d)(1). This section of the IRA also provides a private right of action
 
 *665
 
 to enforce the statutory scheme in federal district court. 25 U.S.C. § 476(d)(2).
 

 On November 5, 1991, the BIA approved two of the petitions submitted by Sandra Thomas in her capacity as “Spokesman for the petitioners” pursuant to 25 C.F.R. § 82.1(o), and called an election. Proposed Amendment A redefined tribal membership in terms of lineal descendancy rather than blood quantums; Proposed Amendment B lengthened the terms of office for elected tribal officials. The election took place on February 1, 1992, and both amendments passed handily: Amendment A carried by a margin of 542 to 105, and Amendment B by a margin of 373 to 274. Following the statutory procedure, LCO member Odric Baker and Tribal Governing Board Chairman Gaiashkibos both filed challenges to the election results within the permitted three-day window, but they were unsuccessful. On February 10, 1992, Michael A. Fairbanks, the Acting Area Director for the BIA, formally approved the amendments to the LCO tribal constitution.
 

 At this point, Gaiashkibos continued his opposition to the election results through less orthodox methods. On April 16 and April 24, 1992 (well beyond the 3-day time period provided by 25 C.F.R. § 81.22 to challenge a Secretarial election, and a month or more after the end of the 45-day period within which the Secretary had to approve or disapprove the election under 25 U.S.C. § 476(d)(1)), he sent letters to Dr. Eddie F. Brown, then-Assistant Secretary of the Interior for Indian Affairs, asking that the decision to approve the election results be reviewed and reversed. Gaiashkibos argued that the election procedures had not conformed to the requirements of the tribal constitution and that not all eligible voting members had been informed of the election. On April 18, 1992, the tribal governing board passed a resolution refusing to recognize the new constitutional amendments.
 

 On October 7, 1992, in response to Gaiashkibos’s persistent efforts, David Matheson, who was then serving as Deputy Commissioner of the BIA, purported to revoke the Department’s prior approval of the election. He noted that the tribal governing board did not have the authority to declare Secretarial election results void, but he agreed that the election was indeed flawed. Matheson explained that elections to amend tribal constitutions had to be conducted in the same manner as the original election to adopt the constitution itself, but that a large percentage of the 1992 LCO voters did not meet the voting criteria for the original LCO constitutional election. Matheson also indicated that a new election would have to be held, in which only LCO members meeting the original voting criteria could vote. (Despite this, a replacement election has yet to take place.)
 

 After various unsuccessful efforts to pei'suade federal officials and the tribal governing board to reverse course and accept the election results or at least hold a new election, on October 2, 1996, the plaintiffs filed the current action in federal district court. As relevant here, they made three claims: First, they alleged that the federal defendants exceeded their statutory authority under 25 U.S.C. § 476(d)(1) when they disapproved the election after the 45-day statutory review period had lapsed. Second, they challenged the Department’s action as arbitrary and capricious under the APA. See 5 U.S.C. § 706(2). Third, they maintained that the federal defendants had breached the general trust relationship between the United States and the Indian people. See
 
 United States v. Mitchell,
 
 463 U.S. 206, 224-26, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). (The plaintiffs also brought a
 
 Bivens
 
 claim against Brown and Matheson, but the district court dismissed that claim for lack of personal jurisdiction and the plaintiffs did not address that determination in their opening brief. The
 
 Bivens
 
 claim is therefore waived.
 
 International Oil, Chem. & Atomic Workers, Local 7-517 v. Uno-Ven Co.,
 
 170 F.3d 779, 783 (7th Cir.1999).) The
 
 *666
 
 plaintiffs did not name the LCO tribal governing board as a defendant to their suit.
 

 The federal defendants filed a number of jurisdictional and procedural objections, among them the contention that the tribal governing board was a party “needed for just adjudication,” without which the case could not proceed, under Rule 19. In an order issued October 14, 1997, the district court agreed that the board’s presence was required under Rule 19(a), but it temporarily denied the defendants’ motion to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19. The court noted that the governing board might join the lawsuit as a plaintiff or be named as a defendant, either of which would avoid the need for dismissal. Although Indian tribes possess sovereign immunity, they, like the states, are also free to waive their immunity.
 
 Santa Clara Pueblo v. Martinez,
 
 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978);
 
 cf. Wisconsin Dept. of Corrections v. Schacht,
 
 524 U.S. 381, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998).
 

 Upon consideration of the matter, the LCO tribal governing board declined to join the suit as a plaintiff. The plaintiffs responded with an amended complaint, filed on November 26, 1997, in which they named the members of the tribal governing board as defendants in both their official and individual capacities. The amended complaint restated all of the claims in the original complaint, added a request for declaratory relief against the tribal defendants in their official capacities under the IRA and individually under the
 
 Ex parte Young
 
 doctrine, and sought damages from the tribal defendants individually under 42 U.S.C. § 1985(3) on the theory that the tribal board members had conspired to deprive them of rights secured by the United States Constitution.
 

 Both the federal defendants and the tribal defendants moved to dismiss, and this time the district court granted the motions on March 27, 1998. The court dismissed any claims against the governing board as barred by its sovereign immunity. It dismissed the IRA and APA claims against the federal defendants for failure to join a party required by Rule 19. Last, it rejected the plaintiffs’ IRA and § 1985 allegations against the tribal defendants for failure to state a claim.
 

 II
 

 On appeal, the plaintiffs have devoted most of their energy to their attack on the district court’s Rule 19 determinations. This court has considered, but not yet decided, whether to review decisions under Rule 19
 
 de novo
 
 or for an abuse of discretion.
 
 North Shore Gas Co. v. Salomon, Inc.,
 
 152 F.3d 642, 648 (7th Cir.1998);
 
 United States ex rel. Hall v. Tribal Dev. Corp.,
 
 100 F.3d 476, 478 (7th Cir.1996) (collecting cases). Respectable arguments can be made in favor of each standard, see
 
 Sokaogon Chippewa Community v. State of Wisconsin,
 
 879 F.2d 300, 303-04 (7th Cir.1989), as the diversity of views among the circuits Illustrates. Compare,
 
 e.g., Koppers Co., Inc. v. The Aetna Cas. & Surety Co.,
 
 158 F.3d 170, 174 (3d Cir.1998) (reviewing Rule 19(a) determinations
 
 de novo
 
 and Rule 19(b) determinations for an abuse of discretion) with
 
 Keweenaw Bay Indian Community v. State of Michigan,
 
 11 F.3d 1341, 1346 (6th Cir.1993) (reviewing Rule 19(a) determinations for an abuse of discretion but Rule 19(b) determinations
 
 de novo).
 
 In the cases we have thus far encountered, the result would have been the same using either standard of review. See
 
 North Shore Gas,
 
 152 F.3d at 648;
 
 Hall,
 
 100 F.3d at 478;
 
 Sokaogon Chippewa,
 
 879 F.2d at 304. This one is no different. Because the district court made a legal error in its analysis, we would reverse its determination under either standard. We therefore once again postpone resolving the question of the proper standard of review in Rule 19 cases for a day when that issue is of some consequence to the outcome.
 

 
 *667
 
 Rule 19 sets up a two-step inquiry. First, the court must determine whether a party is one that should be joined if feasible—called, in the old days, a “necessary” party. Fed.R.Civ.P. 19(a);
 
 Hall,
 
 100 F.3d at 478. To answer that question, the court must consider (1) whether complete relief can be accorded among the parties to the lawsuit without joinder, (2) whether the absent person’s ability to protect its interest in the subject-matter of the suit will be impaired, and (3) whether any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent person joins the suit. Fed.R.Civ.P. 19(a). Only if the court concludes, based on those factors, that the party should be included in the action but it cannot be, must it go on to decide whether the litigation can proceed at all in the party’s absence. See Fed.R.Civ.P. 19(b). If there is no way to structure a judgment in the absence of the party that will protect both the party’s own rights and the rights of the existing litigants, the unavailable party is regarded as “indispensable” and the action is subject to dismissal upon a proper motion under Federal Rule of Civil Procedure 12(b)(7).
 

 In this case, the district court concluded that the tribal governing board had to be joined under Rule 19(a) primarily because “[t]he proposed amendments deal with matters of fundamental importance to the tribe.” The court also expressed concern that it could not afford complete relief, because the governing board could again refuse to enforce the amendments even if the Secretary, as a result of this suit, approved the election results. Finally, the court noted the risk that the BIA might be exposed to additional litigation over the same election if it approved the election results and the governing board later sued it in an attempt to win a reversal. While the court correctly followed the formal structure of a Rule 19(a) inquiry by focusing on the missing party’s interest, the adequacy of relief, and the possibility of incompatible obligations, we believe its reasoning fundamentally misapprehends the limited role of the tribal government in a federal Secretarial election.
 

 At its base, this lawsuit is a challenge to the way certain federal officials administered an election for which they were both substantively and procedurally responsible. It bears emphasizing that Secretarial elections, such as the one at issue here, are federal—not tribal—elections. 25 C.F.R. § 81.1(s). Tribes are sovereign only to the extent that their sovereignty has not been qualified by statutes or treaties.
 
 Iowa Mut. Ins. Co. v. LaPlante,
 
 480 U.S. 9, 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). The IRA explicitly reserves to the federal government the power to hold and approve the elections that adopt or alter tribal constitutions. 25 U.S.C. § 476. As the Eighth Circuit explained, “[i]t is not merely the number or type of federal involvements which characterize these elections as federal.... Rather, it is the source of the Secretary’s regulatory authority over these elections, such authority having congressional!,] and not tribal, origin.”
 
 Cheyenne River Sioux Tribe v. Andrus,
 
 566 F.2d 1085, 1088 (8th Cir.1977). The Secretary’s powers to disapprove an election upon the filing of a proper challenge are very broad, and can include flaws in the make-up of the eligible electorate. See
 
 Shakopee Mdewakanton Sioux (Dakota) Community v. Babbitt,
 
 107 F.3d 667 (8th Cir.1997).
 

 One can question the wisdom of retaining federal control over matters of such fundamental importance to the tribe as its own constitutional ratification and amendment process. See Timothy W. Jor-anko & Mark C. Van Norman,
 
 Indian Self-Determination at Bay: Secretarial Authority to Disapprove Tribal Constitutional Amendments,
 
 29 Gonz. L.Rev. 81 (1993/94). Nonetheless, the balance of power that Congress struck in this context is the compass we must follow for determining the legal significance of the tribal interest under Rule 19(a). We accept the
 
 *668
 
 fact that tribes have a strong interest in matters, like Proposed Amendment A, that relate to membership,
 
 Santa Clara Pueblo,
 
 436 U.S. at 71 n. 32, 98 S.Ct. 1670, but the fact that a tribe has an interest in the litigation is not enough in itself to make it a necessary party in the sense of Rule 19. See
 
 State of Washington v. Daley,
 
 173 F.3d 1158, 1167-69 (9th Cir.1999).
 

 Here, the decision of Congress to privilege federal control over tribal interests in tribal constitutional elections is unmistakable. The language and structure of the statute leave no doubt where authority lies, and debates within Congress are entirely consistent with our conclusion. As recently as 1988, the Department of the Interior urged Congress to entrust the amendment process to the tribes, arguing that “Secretarial involvement in the calling of elections and approval of constitutions and bylaws, and amendments to them, is not consistent with the policy and goal of tribal self-determination.... Any challenges to tribal elections of tribal governing documents should be resolved through a tribal process in the tribal forums.” Comments of Assistant Secretary of the Interior on H.R. 2677, S.Rep. No. 577, 100th Cong., 2d Sess. 34-35 (1988), reprinted in U.S.C.C.A.N. 3908, 3924-25. But Congress rejected this recommendation and instead passed the current version of 25 U.S.C. § 476, which establishes the present version of the Secretarial election process. Congress thereby refused to reflect the tribal interest in the legal structure of tribal constitutional elections, notwithstanding the core values of government and self-determination that a tribal constitution necessarily embodies. Following the path laid out by Congress, we conclude that the district court erred in finding the governing board had to be included in the lawsuit based on the depth of the tribe’s interest in the matters addressed in the Secretarial election.
 

 Nor are we persuaded that there is a legally cognizable risk of incomplete relief that is so strong that this suit must be dismissed in the absence of the tribal governing body. As BIA Deputy Commissioner Matheson noted in his belated October 1992 letter withdrawing the approval of the election results, and as we agree, the tribal governing board has no legal authority to refuse to implement amendments to the tribal constitution that have been put to a vote and approved by the Secretary. To say that the governing board must be a party because it might unlawfully refuse to implement the election results is not so different from saying that a warden is a necessary party in every criminal case, because she might unlawfully refuse to imprison a convicted criminal. Or, somewhat closer to the facts of this case, it would be like saying that all of a state’s municipalities are necessary parties whenever a state referendum is contested in court, because any one of them might refuse to honor the court’s disposition of the case—even though they are of course bound to implement state law, regardless of whether an election, administrative action, or court opinion last shaped that law. Indeed they might rebel, but joinder is not the appropriate vehicle to remedy such possible disobedience. Instead, the normal enforcement mechanisms, such as injunctions, are the proper choice.
 

 These same considerations make the district court’s concern with the possibility of a later suit by the governing board unpersuasive. The tribal governing board’s interest in a lawful administrative process under 25 U.S.C. § 476 is equivalent to that of the plaintiffs.
 
 Cf. Makah Indian Tribe v. Verity,
 
 910 F.2d 555, 559 (9th Cir.1990) (finding that absent tribes affected by the subject-matter of disputed regulations were not necessary parties to adjudicating a claim that the Secretary had followed flawed procedures in promulgating the regulations because “all of the tribes have an equal interest in an adjudicative process that is lawful.”). Moreover, the governing board has no special legal status in regard to the Secretarial election that gives it a different position from which to mount a
 
 *669
 
 post-election challenge than that held by any other group of tribal voters. See 25 C.F.R. § 81.22 (“[A]ny qualified voter . .. may challenge the election results.... ”).
 

 In fact, to the extent that anyone has a special legal status in regard to this election that should be taken into account, it is plaintiff Sandra Thomas, who served as spokesperson for the amendment petitions pursuant to 25 C.F.R. § 82.1(o). To conclude, then, that the risk of a subsequent lawsuit by the governing board requires it to be added as a necessary party would be tantamount to holding that all voters are necessary parties whenever a subset of voters brings an election contest, because they have the same standing to sue and might some day exercise it. That would be an absurd result, and one at odds with the more concrete concerns that animate the inconsistent-obligation prong of the Rule 19(a) inquiry. See generally Charles Alan Wright, Arthur R. Miller
 
 &
 
 Mary Kay Kane, 7 Federal Practice & Procedure § 1604 (discussing the purposes underlying the Rule 19(a) joinder criteria).
 

 After its challenges were rejected, the board could itself have brought an action to test the Secretary’s approval of the election; but no one did any such thing. At this point, the board is trying to leverage its failure to follow the prescribed statutory procedures into an unreviewable decision to disapprove the election, by taking advantage of Rule 19. We cannot condone this kind of ploy, especially because, as 25 U.S.C. § 476(b) states, “[a]ny constitution or bylaws ratified and approved by the Secretary shall be revocable by an election open to the same voters and conducted in the same manner as provided in subsection (a) of this section for the adoption of a constitution or bylaws.” The governing board need not be stuck with an illegitimate constitution, if that is indeed what it thinks resulted from the February 1992 vote. The statute prescribes precisely how it can obtain relief.
 

 In sum, the respective roles of the federal government, the tribal government, and the tribal electorate under 25 U.S.C. § 476 dictate that the plaintiffs’ suit against the federal officials who conducted the 1992 Secretarial election should not be dismissed because the tribal governing board cannot be made a party to the lawsuit. The governing board, though it indisputably has an interest in the subject-matter of the suit, is not a necessary party. This result in no way silences the governing board. If it wishes to advocate for its interest by participating in this lawsuit, there are procedural vehicles at its disposal that will even now allow it to do so, including a petition to intervene under Rule 24 and participation as
 
 amicus curiae.
 
 Finally, this result does not slam the courthouse door in the face of the plaintiffs, who seek only to invoke the judicial oversight of the Secretary’s actions provided for in 25 U.S.C. § 476(d)(2).
 

 One final note. The plaintiffs argue that they have stated proper claims against the tribal defendants under the IRA and 42 U.S.C. § 1985(3). At oral argument, however, plaintiffs’ counsel assured us that the plaintiffs would have no interest in pursuing their claims against the tribal defendants were we to conclude that Rule 19 did not require their participation. We have reached that conclusion. Accordingly, we treat these claims as abandoned for the present time.
 

 Because the tribal governing board is not a party whose joinder in this suit is required by Rule 19, we Reverse and Remand this case for further proceedings consistent with this opinion.