In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4042

Davis Companies, a California corporation,

Plaintiff-Appellant,

v.

Emerald Casino, Inc., formerly known as
HP, Inc., an Illinois corporation, Joseph
McQuaid, individually and as an agent of
HP, Inc., Donald F. Flynn, individually and
as an agent of HP, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 6822--Ronald A. Guzman, Judge.

Argued April 12, 2001--Decided September 28, 2001

 Before Bauer, Manion, and Kanne, Circuit
Judges.

 Manion, Circuit Judge.  Davis Companies
filed a complaint against Emerald Casino,
Inc., formerly known as HP,/1 and three
of its officers, alleging breach of an
oral con-tract pursuant to which Davis
was to acquire stock ownership in HP. The
defendants moved to dismiss under Fed. R.
Civ. P. 12(b)(7) for failure to join
Richard Duchossois as a necessary and
indispensable party, claiming that he was
also a party to the alleged contract. The
district court granted the defendants'
motion, and since the joinder of
Duchossois would destroy complete
diversity the district court dismissed
the action. Davis appeals, and we
reverse.

I.

 According to the Second Amended
Complaint,/2 on December 1, 1998, after
extensive negotiations, Davis Companies,
a California corporation, entered into an
oral contract with HP, an Illinois
corporation and owner of an Illinois
gaming license for the operation of
riverboat gambling. The oral contract was
negotiated for Davis by Michael Colleran,

its Executive Vice President, and for HP by Kevin Flynn, a shareholder of HP and son of Donald Flynn, an officer, director and shareholder of HP.

The parties conditioned the oral contract upon passage of legislation in the Illinois General Assembly amending the Illinois Riverboat Gambling Act, 230 ILCS 10/1 et seq., to permit HP's license to be used for a casino in Rosemont, Illinois. Under the terms of the oral contract, upon enactment of the amendment HP would issue sufficient shares to Davis to make Davis the owner of a 37.5% interest in HP. In return, Davis would make a $12 million capital contribution to HP. Davis understood that HP would also issue sufficient shares to make Richard Duchossois, an Illinois resident, owner of a 20% interest in HP, and to make local investors collectively the owner of a 5% interest in HP. The issuance of shares to Duchossois and the local investors was not a condition precedent to the oral contract between Davis and HP. After all shares were issued (to Davis, Duchossois and the local investors), the shares of the existing HP shareholders as of December 1, 1998 would be diluted from a 100% ownership to a 37.5% ownership interest.

Davis understood that HP intended to raise a total of $30 million to be distributed to HP's original investors who had lost their $30 million investment in HP's defunct riverboat operations. Davis also understood that HP might issue additional shares to third parties in the future, and that the 37.5% shares of Davis and the existing shareholders, the 20% interest of Duchossois and the 5% interest of local investors would be proportionally diluted. Davis also alleged that on December 1, 1998, in a separate oral contract, the Flynns promised to take any and all steps to assure HP's performance of its contractual obligation to Davis. The Complaint describes in detail the negotiations undertaken by a number of parties to structure an overall plan to open and support a casino in Rosemont.

According to the Complaint, immediately following the December 1, 1998 meeting between Flynn and Colleran, Flynn met with Duchossois and other parties. At that meeting, Flynn allegedly informed

the group that he and Colleran had reached a deal and he also stated that he was willing to sell Duchossois a 20% interest in HP. Later that day, Duchossois and others met with Colleran, at which time Colleran also told Duchossois that he and Flynn had agreed to a deal. Duchossois confirmed to Colleran that Flynn had told him he was willing to sell him a 20% interest in HP.

The Illinois Riverboat Gambling Act was amended, effective June 25, 1999, to permit the holder of a dormant license to renew and relocate its license to any community willing to accept a casino. See 230 ILCS 10/11.2./3 Since HP owned the only dormant license in the State of Illinois, the legislation essentially permitted HP to transfer its gaming license to open a casino in Rosemont upon Rosemont's decision to approve the relocation. Davis alleges that, once the legislation passed, HP was obligated to issue its shares to Davis and Davis was obligated to pay $12 million to HP. However, the defendants denied the existence of any contracts with Davis.

Accordingly, Davis sued HP, the Flynns and Joseph McQuaid, an officer and director of HP, in federal district court claiming breach of contract, equitable estoppel, fraud and conspiracy, and seeking specific performance or monetary damages of not less than $250 million and punitive damages. The defendants moved to dismiss under Fed. R. Civ. P. 12(b)(7) for failure to join Richard Duchossois as a necessary and indispensable party under Fed. R. Civ. P. 19. The defendants claimed that Duchossois (then Chairman of Arlington International Racecourse) was also a party to the alleged contract. After considering the pleadings and extrinsic evidence, the district court agreed./4 The district court concluded that the contracts or options (both Davis's and Duchossois's) were interrelated and interdependent in substance and operation, and that Duchossois was therefore a necessary party that should be joined under Rule 19(a).

Since the joinder of Duchossois would destroy complete diversity, however, the court then proceeded under Rule 19(b) to determine whether in "equity and good conscience" the case should be

dismissed./5 The court found that Davis's claims would significantly impact Duchossois's interests. Next, it found that the defendants could suffer prejudice as a result of the failure to join Duchossois, because a later lawsuit could subject them to multiple and possibly inconsistent verdicts. Next, the court found that it could not easily fashion relief limited to Davis's options without delving into the alleged contract between the defendants and Duchossois. Lastly, the court noted that there was an alternative forum, Illinois state court. Accordingly, the district court granted the defendants' motion and dismissed the action. Davis appeals.

II.

An initial matter concerns the appropriate standard of review of the district court's Rule 19 dismissal. Davis argues for de novo review while HP urges us to adopt an abuse-of-discretion standard. While we have noted the advantages of the more deferential standard, see Sokaogon Chippewa Cmty. v. State of Wisconsin, Oneida County, 879 F.2d 300, 303-04 (7th Cir. 1989), we have yet to decide on the appropriate standard. See Thomas v. United States, 189 F.3d 662, 666 (7th Cir. 1999); United States ex rel. Hall v. Tribal Dev. Corp., 100 F.3d 476, 478 (7th Cir. 1996). That decision need not be made today, however, because we would reverse the district court under either standard.

The purpose of Rule 19 under the Federal Rules of Civil Procedure is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1447 (7th Cir. 1990). However, federal courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum. See Pasco, 637 F.2d at 501. Joinder under Rule 19 is a two-step inquiry:

First, the court must determine whether a party is one that should be joined if feasible--called, in the old days, a "necessary party." Fed. R. Civ. P. 19(a); Hall, 100 F.3d at 478. . . . [I]f the court concludes . . . that the party should be included in the action but it

cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence. See Fed. R. Civ. P. 19(b). If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as "indispensable" and the action is subject to dismissal upon a proper motion under Federal Rule of Civil Procedure 12(b)(7).

See Thomas, 189 F.3d at 667.

To answer the first question, whether Duchossois is a necessary party, under Rule 19(a)/6, we must consider (1) whether complete relief can be accorded without joinder, (2) whether Duchossois's ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless he is joined. See Thomas, 189 F.3d at 667. The district court concluded that complete relief could not be accorded in Duchossois's absence, that he had an interest in the present action which he would be unable to protect without joinder, and that HP would be subjected to a substantial risk of multiple or inconsistent obligations in his absence. Granting the facts upon which the district court based its Rule 19 determination, the issue is what legal meaning those facts possess. To the extent that the district court concluded that Davis and Duchossois had interdependent contracts (or options) with HP, this is a legal conclusion that we review de novo. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993) (finding that, to the extent a district court's Rule 19(a) determination is premised on a conclusion of law, review is plenary).

In this case, it is unnecessary for us to determine whether a contract actually existed (whether between HP and Davis or between HP and Duchossois) in order to find that the alleged contract between HP and Davis is independent from one between HP and Duchossois. Based on the record before us, the district court incorrectly concluded that Davis and Duchossois had interdependent contracts or options. Instead, we conclude that the evidence

demonstrates that, no matter what interest or relation he ultimately had with HP, it was separate from Davis's alleged contract and therefore Duchossois has no interest in the subject matter of this lawsuit.

Duchossois was deposed during discovery and testified that he had a "gentleman's agreement" for an option to acquire a 20% interest in HP in the event HP's license was actually used in Rosemont. He testified that the precise terms of the option, such as price, were not agreed to. Furthermore, he testified that the "option" was never actually offered to him. He stated that a few days after the legislation was enacted, "[t]hey told us then that they couldn't make the offer. They reneged on making the offer." Duchossois testified that "there was a breach of trust, breach of confidence, a breach of a contract or breach of a gentleman's agreement." Duchossois testified that "I wasn't doing any dealing with Colleran. We were entirely separate. His deal with Kevin [Flynn] was entirely separate from mine." In discussing his involvement with the passage of the gambling law amendment, Duchossois testified that "if any legislation was going to go through for the villages that were benefitting by Rosemont, for Rosemont, for the casinos, for the harness people, the breeders, the thoroughbred people and the race track, everyone had to come together with some sort of a consensus. . . . That had been assumed from the very beginning that everyone was going to pull their own weight on the thing. There was no such thing as I would be helping them, they would be helping me; that wasn't even part of it. We were all going to be working together in one coalition." Pl. App. A57.

Duchossois's attorney, David Filkin, testified that he understood that Duchossois "would be offered 20 percent of the entity which owned the license of the relocated riverboat." He further testified that, in a meeting with Flynn, Flynn did not say that Duchossois's ability to purchase 20% depended upon whether Davis purchased 37.5% and vice-versa.

Colleran testified that he discussed Duchossois's interest in the deal with

Flynn, but that "the deal for Duchossois to have acquired an interest was really a separate agreement between him and HP, the way I understood it." In addition, he testified that his "agreement with Kevin Flynn was that Davis would receive a 37.5% interest for $12 million; and, you know, what he agreed to with respect to Duchossois and the 5% had to be up to him. I had no agreement with him on that. It was only with respect to what I could speak for, which was the Davis Group." Eugene Reineke, Davis's principal lobbyist for gaming legislation in Illinois, testified similarly that the deals were separate. Lastly, Marvin Davis testified that he "had nothing to do with Duchossois's deal."

Following briefing on HP's motion to dismiss and after the close of discovery, the district court granted HP's motion to compel Duchossois to produce a December 2, 1998 memorandum which had been prepared by his lawyer, David Filkin (the "Filkin Memo"), to which Duchossois had asserted an attorney-client privilege. The Filkin Memo summarized the December 1, 1998 meeting among Duchossois, Filkin and Colleran. At the meeting, Colleran stated that he had just come from a meeting with Kevin Flynn wherein they had allegedly negotiated the oral contract at issue in this case. Filkin's handwritten notes from the meeting had already been produced in discovery and both Filkin and Duchossois were deposed on the notes and their recollection of the meeting. Finding that the Filkin Memo contained nothing that was not already in the handwritten notes, the district court ordered its production. No party requested that the court reopen discovery to allow depositions on the Filkin Memo. The district court relied heavily on the Filkin Memo in granting HP's motion to dismiss under Rule 19. According to the district court's interpretation of that memo, all of the parties at that meeting considered Duchossois to be a party to "whatever agreement they might reach."

The district court's reliance on the Filkin Memo to establish a tripartite or interrelated deal was misplaced. The Filkin Memo states that "Mike [Colleran] stated that he and Kevin Flynn had just agreed upon a deal structure as follows: Marvin Davis 37.5%, Flynns 37.5%, R.L. Duchossois 20%, Other 5%." The district court concluded that this established the

interrelatedness of the deals. To the extent that the Filkin Memo can be interpreted to conflict with the witnesses' sworn deposition testimony, the district court should have resolved any "conflicts in the affidavits and depositions submitted by the parties . . . in favor of the plaintiff." Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215 (7th Cir. 1984). Instead, the district court resolved any conflicts created by its interpretation of the Filkin Memo in favor of the defendants.

Davis's pleadings in no way indicate that Duchossois was a party to their contract, and indeed specifically state that Duchossois's own expected participation was not a condition precedent to the Davis/HP oral contract. In addition, the overwhelming deposition testimony establishes that whatever interest he had, Duchossois specifically denied being part of the alleged contract between Davis and HP. The Filkin Memo does not contradict this. On the record before us, construing the evidence in the light most favorable to the plaintiff, it is clear that whatever his interest in the Rosemont casino deal, it was not the same as the contract Davis alleges to have with HP. A number of parties clearly worked together to garner support for the Rosemont casino and to lobby the state legislature. In those negotiations, it would not be unusual for one party to refer to other capital suppliers as evidence that the deal would ultimately be lucrative or successful. Even if the negotiations were necessarily interrelated, the deals were not necessarily so. Thus, we conclude that the contracts were not interdependent and tripartite in nature. Whatever interest Duchossois has in HP, it is separate from the contract at issue before the court. Indeed, Duchossois denies an interest relating to the subject matter of this lawsuit and under Rule 19(a) it is the absent party that typically must claim such an interest. See United States v. Bowen, 172 F.3d 682, 689 (9th Cir. 1999) (where absent party was aware of action and claimed no interest, district court did not err in finding joinder unnecessary); Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) (accord).

Thus, while it is true that "a

contracting party is the paradigm of an indispensable party," Hall, 100 F.3d at 479 (citation omitted), "[w]hen a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract . . . ." 7 Charles Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure Civil 3d, sec. 1613 at 197 (2001). In addition to Duchossois there were no doubt a number of other parties involved in and certainly interested in the effort to open a casino in Rosemont. Obviously the litigation between Davis and HP would not label these parties as necessary litigants. Likewise, we decline to find that Duchossois is a necessary party to litigation between Davis and HP.

The defendants respond by arguing that "complete relief" cannot be accorded among the existing parties absent joinder because any relief would require a determination of the respective stock ownership rights of HP's shareholders, Davis's claimed rights and any right Duchossois may claim. However, the term "complete relief" refers only to "relief between the persons already parties, and not as between a party and the absent person whose joinder is sought." Perrian v. O'Grady, 958 F.2d 192, 196 (7th Cir. 1992) (citation omitted). The present lawsuit concerns the alleged breach of contract by HP and its liability to Davis for damages caused by that breach. Here, if HP prevails, Davis's claims would be completely resolved. If, on the other hand, Davis prevails in this litigation, the court need only determine, under the contract at hand, the proper damages due Davis. See Abel v. American Art Analog, Inc., 838 F.2d 691, 695 (3d Cir. 1988) (where partner brought suit for 30% share of profits on his own behalf, and not on behalf of the partnership, and because a jury could easily calculate partner's rights and damages independently of other partners, other partners were not necessary parties). According complete relief to Davis would not require resolving every other collateral issue relating to HP's corporate structure.

As noted, Rule 19(a)(2)(i) requires us to consider whether Duchossois's ability to protect his interest will be impaired. Again, because we conclude that Duchossois has no interest in the subject matter of this particular lawsuit, his ability to bring his own future lawsuit to protect any individual claims will not be impaired. Davis is not pursuing this litigation on Duchossois's behalf, and does not allege to be in privity with him. Accordingly, a decision for or against Davis in this action should not preclude any subsequent case filed by Duchossois, as unlikely as that litigation seems to be, given his apparent unwillingness to join this litigation. See Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co., 417 F.2d 1113, 1115 (7th Cir. 1969) (where separate contracts created separate obligations, decision in one case would not bind absent parties in future cases).

Finally, Rule 19(a)(2)(ii) requires us to consider whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless Duchossois is joined. The fact that HP might be liable to Duchossois in a future action does not create the substantial risk of multiple or inconsistent obligations. This is not a case where a judgment imposing liability on HP to Davis necessarily implies that HP is also liable to Duchossois. There is no overlap between the shares allegedly offered to Davis and to Duchossois, and therefore no inconsistent or multiple ob ligations are possible. Once Davis's suit against HP is concluded, no further suits between those two parties are possible. Any subsequent liability of HP to Duchossois is independent of liability determined in the present lawsuit. And, the risk of an additional lawsuit is certainly insubstantial because Duchossois is clearly disinclined to sue.

In closing, we note that the defendants are unlikely to produce someone to contradict Duchossois's denial that he had an interdependent agreement with HP and Davis. Indeed, their entire defense is premised on the fact that no contract existed. However, this litigation illustrates that the defendants would like to have their cake and eat it too. They would like the court to declare

Duchossois a contracting party for purposes of dismissal from federal court, yet will deny the existence of any contract at all for purposes of the underlying merits of the case. The advantage of such a cross-current flows only to HP, and it does not persuade us that Duchossois must be joined as a necessary party to this litigation. See Pasco, 637 F.2d at 505. We also note that HP is certainly not precluded from presenting evidence relating to Duchossois's knowledge of the alleged oral contract, as well as his involvement in the deal. This is reinforced by the fact that Duchossois has already given testimony during discovery. See Perrian, 958 F.2d at 196 n.5.

 Because we conclude that Duchossois is not a necessary party pursuant to Rule 19(a), we need not examine the factors articulated in Rule 19(b), id. at n.6, and therefore REVERSE the judgment of the district court and REMAND for further proceedings.

FOOTNOTES

/1 On August 16, 1999, HP changed its corporate name to Emerald Casino, Inc. However, we will refer to the corporate defendant as HP throughout this opinion.

/2 For purposes of a motion to dismiss for failure to join a party under Rule 19, we accept the allegations in the complaint as true. See Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 499 n.2 (7th Cir. 1980).

/3 The amendment also provided that any such relo-cated licensee shall "attain a level of at least 20% minority person and female ownership, at least 16% and 4% respectively . . . ." 230 ILCS 10/11.2(b).

/4 In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence. See English v. Cowell, 10 F.3d 434, 437 (7th Cir. 1993); Capitol Leasing Co. v. Fed. Dep. Ins. Corp., 999 F.2d 188, 191 (7th Cir. 1993).

/5 Rule 19(b) provides, in relevant part: "If a person described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be

considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or othermeasures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

/6 Rule 19(a) provides, in relevant part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party." Fed R. Civ. P. 19(a).