2022 IL App (1st) 211597-U

FIRST DISTRICT,
FIRST DIVISION
November 28, 2022

No. 1-21-1597

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| 2336 NORTH CLARK, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| HAIR FAIRIES, INC., MARIA BOTHAM, and | ) | |
| EDMOND ADAMY, | ) | No. 20 M1 700754 |
| | ) | |
| Defendants | ) | Honorable |
| | ) | James A. Wright, |
| (Hair Fairies, Inc. and Maria Botham, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellants). | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) In eviction action, the trial court's denial of defendants' oral motion for continuance on the day of trial was not an abuse of discretion. (2) Liquidated damages clause in lease purporting to grant landlord 27 months in future rent was an unenforceable penalty clause in the absence of evidence that it bore any relation to the landlord's expected damages. (3) Landlord was not required to mitigate damages while tenant was still in possession of premises. (4) Landlord sufficiently established damages for the cost of restoring the premises.

¶ 2      Plaintiff 2236 North Clark, Inc., brought an eviction and breach of contract action against its tenant, Hair Fairies, Inc., and Maria Botham, the president of Hair Fairies and a guarantor of the lease.[1] Following a bench trial, the trial court entered an eviction order and a judgment of $249,582.77 in favor of plaintiff. We affirm in part and reverse in part.

¶ 3                                    BACKGROUND

¶ 4      Hair Fairies, a hair lice removal salon, leased property from plaintiff at 2336 North Clark in Chicago, Illinois, for monthly rent of $4371 plus utilities and a *pro rata* share of the building's real estate taxes and insurance expenses. The Third Lease Amendment, which was in effect when the present action was filed, set forth a lease term from November 1, 2018 to October 31, 2023.

¶ 5      Hair Fairies "stopped fully paying rent" in December 2019. On January 9, 2020, plaintiff sent Hair Fairies a five-day eviction notice demanding payment of past-due rent, taxes, and insurance totaling $15,572.62. On January 15, 2020, plaintiff filed an eviction complaint seeking immediate possession of the premises, the unpaid sum of $15,572.62, and future sums accruing during the pendency of the lawsuit. Pursuant to the terms of the lease, plaintiff also sought late fees, attorney fees, and costs of bringing the action.

¶ 6      Plaintiff additionally brought a count for breach of guarantee against Botham, alleging that she was a guarantor of the lease and on January 14, 2020 (*i.e.*, the day before plaintiff filed suit) plaintiff advised her in writing of Hair Fairies' default and demanded all amounts due, which Botham did not pay. Against Botham, plaintiff sought damages, monthly use and occupancy charges of $4371 during the pendency of the lawsuit, and "a sum equal to the unpaid rent and other charges due" for the balance of the lease term until October 31, 2023.

---

[1] Edmond Adamy is also named as a defendant but is not party to this appeal.

¶ 7        On June 8, 2020, the parties entered into a settlement agreement in which defendants agreed to pay plaintiff a lump sum of $32,744, which they acknowledged was due and owing under the lease. Plaintiff agreed to a "conditional partial abatement" of rent, reducing the monthly rent to $1301 from June 1 to December 31, 2020. In the event of breach, defendants agreed to pay the abated rent. Plaintiff also agreed to dismiss the lawsuit without prejudice, with leave to reinstate "in the event there is a breach of this Settlement Agreement or any further breach of the Lease, as Amended, by Tenant."

¶ 8        On June 11, 2020, the parties executed an amendment to the lease (the Fourth Lease Amendment) incorporating the foregoing provisions. On July 21, 2020, the court entered an agreed settlement order acknowledging the terms of the settlement agreement, dismissing the action without prejudice, and further providing:

> "2. In the event that Tenant breaches any of the terms of the Settlement Agreement or any of the terms of the commercial Lease agreement ***, Landlord shall have the right to reinstate this action.

> 3. In the event that *** Tenant defaults on any of its obligations to Landlord ***, then:

>> a. Tenant agrees to the entry of an immediate order of possession in favor of Plaintiff, Landlord against it for the Leased Premises ***; and

>> b. Tenant and Guarantors agree to the entry of an immediate Judgment Order against them, jointly and severally, for all amounts due and owing under the Settlement Agreement and the Lease including all abated rent, plus all damages recoverable under the Lease ***."

¶ 9    On June 29, 2021, plaintiff filed a motion to reinstate the action, alleging that after March 5, 2021, defendants ceased making payments as required by the settlement agreement. Plaintiff alleged that its damages "including all conditional rent abatements, rent due under the Lease, amounts due through the end of the Lease, costs, and attorney's fees" totaled "approximately $235,657.00." On the same day, plaintiff served notice of the motion and copies of the motion on all defendants by mail and on Botham by email.

¶ 10    On July 14, 2021, the trial court heard and granted plaintiff's motion to reinstate the case, entered an eviction order against defendants, and set a trial date of July 20, 2021 on the issue of damages. Defendants were not represented by counsel at the July 14 hearing.

¶ 11    At the start of trial, counsel for the parties introduced themselves, and the following colloquy occurred:

> "DEFENSE COUNSEL: I just filed an appearance last night on behalf of Hair Fairies, Inc., and Maria Botham. I was just retained a couple days ago. Filed my appearance last—
>
> THE COURT: Retained to do what?
>
> DEFENSE COUNSEL: To represent Hair Fairies and Ms. Botham in this proceeding.
>
> THE COURT: All right. You're not going to get any additional time, sir.
>
> DEFENSE COUNSEL: Well, for the record, we're asking for 30 days.
>
> THE COURT: You're not going to get it. You're not going to get, sir. You're coming in at the 11th hour.
>
> DEFENSE COUNSEL: I was just retained, your Honor.

THE COURT: You know what, I feel for you, but you're not going to get more time. We're going to go today, right now."

¶ 12    James Winkler, president of the landlord's managing company, testified that defendant was still in possession of the premises and that plaintiff sought $239,602.77 in damages as follows:

- $36,065 in past-due rent as reflected in the tenant ledger;

- $7100 in rent abatement under the original lease, which granted defendants a 62-day period of "free rent *** as kind of an inducement to enter into the lease," with a clause stating that in the event of default, the landlord was entitled to recover the abated rent;

- $21,490 in rent abatement under the Fourth Lease Amendment;

- $173,502, representing 27 months of future rent under the lease's rent acceleration clause providing that, in the event of default, the landlord could recover the balance of rent owed through the end of the lease term, *i.e.*, October 31, 2023;

- $13,593.77 in attorney fees and costs; and

- $10,000 to restore the premises to their original condition.

¶ 13    Regarding the cost of restoring the premises, Winkler testified that he was experienced in the construction business and does "a lot of projects, tenant remodels, [and] restaurant build outs." He visited the premises "last week" and observed:

"It's built out as a hair lice removal salon, so it's got all the shelving and equipment and things for that build out. It's painted all different colors. They have their own light fixtures up. It's actually fairly dirty. The floor is not in good shape. It needs—definitely needs a bunch of work to put it back. When they got it, it was a vanilla box with the new floor and super clean."

He estimated it would take $10,000 "to restore the premises to a vanilla box."

¶ 14    Before rendering judgment, the court addressed defense counsel's argument that he should have been granted a continuance to prepare for trial and conduct discovery:

> "Your client, the president, Ms. Botham, had been here previously. This matter has been up before. This wasn't the first time this matter was up. This matter has been up numerous times. And then award of possession was entered on July 14th. So to come in at the last hour before hearing *** does not make this matter improper to go forward.
>
> * * *
>
> Your client had opportunities to get an attorney before a show up. She didn't do it until just now. So we're not going to stop this process. We're not going to say, okay, well, you're in now, so you're entitled to some discovery or anything. This is a court of limited discovery. This is a court of summary proceedings. That's why we decided to go forward on this."

¶ 15    The court then asked counsel for plaintiff: "What about mitigation efforts?" Counsel replied that any duty to mitigate was waived under the terms of the settlement agreement. She further stated that the landlord had no duty to mitigate under the circumstances since "[the tenant's] stuff is still all over there, and she's got the keys, and the place is locked up."

¶ 16    The court granted judgment for plaintiff in the amount of $239,602.77, the full amount sought. Defendants filed a motion for reconsideration on August 2, 2021, arguing that the trial court erred in denying their oral motion for a continuance. In support, Botham attached her own affidavit in which she stated that at the initial presentment of plaintiff's motion to reinstate on July 14, 2021, the trial court advised her to retain counsel. She further stated:

"6. This was the first and only time Judge James A. Wright advised me to retain counsel.

7. From that point forward, I worked diligently to do so and, prior to the next hearing scheduled for July 20, 2021, retained counsel *** to represent us.

8. I was under the impression, based upon the Court's direction on July 14, 2021, that both Hair Fairies, Inc. and I would be given sufficient time for us and our counsel to prepare for a trial on the merits in this matter."

¶ 17       Defendants also argued that (1) the accelerated rent clause in the lease under which plaintiffs sought 27 months of future rent was an unenforceable penalty clause that "bears no relationship to the anticipated damages due to a breach," (2) plaintiff failed to satisfy its burden of proving mitigation, and (3) plaintiff lacked foundation for its claimed $10,000 in costs of restoring the premises.

¶ 18       On November 2, 2021, the trial court heard and denied defendants' motion for reconsideration and granted plaintiff leave to seek additional attorney fees and costs incurred after July 20, 2021. Plaintiff subsequently sought a supplemental award for attorney fees and costs in the amount of $9980. On November 18, 2021, the trial court granted plaintiff's motion and added the supplemental award to the prior judgment for a total of $249,582.77.

¶ 19                                    ANALYSIS

¶ 20       Defendants argue that (1) the trial court erred in denying defense counsel's oral motion on the day of trial for a 30-day continuance; (2) the accelerated rent clause in the lease, purporting to grant plaintiff 27 months of future rent as liquidated damages, is against public policy and unenforceable as a matter of law; (3) plaintiff failed to mitigate its damages; and (4) plaintiff lacked foundation for its estimated $10,000 cost of restoring the premises.

¶ 21                                   Continuance

¶ 22        There is no absolute right to a continuance, and a continuance requested on the day of trial "requires that an especially persuasive reason be given by the moving party because of the potential inconvenience to the witnesses, the parties and the court." *In re Marriage of Gallagher*, 256 Ill. App. 3d 439, 442 (1993); see Ill. S. Ct. Rule 231(f) (eff. Jan. 1, 1970) ("No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."). The trial court has broad discretion in granting or denying a motion for continuance, and "in the absence of a manifest abuse of that discretion, its judgment will not be disturbed on appeal." *Feder v. Hiera*, 85 Ill. App. 3d 1001, 1002 (1980). In determining whether a manifest abuse of discretion has occurred, we "must balance the prompt disposition of the case with the equally compelling interest in obtaining justice." *O'Neill v. Brown*, 242 Ill. App. 3d 334, 343 (1993).

¶ 23        "The decisive factor in assessing the merits of a motion for a continuance is whether the moving party has exercised due diligence in proceeding with the case." *Somers v. Quinn*, 373 Ill. App. 3d 87, 96 (2007). Defendants stopped paying rent after March 5, 2021. Based on the settlement agreement and the court's settlement order, defendants could have anticipated that plaintiff would seek to reinstate the eviction action and that retaining counsel would be prudent. Additionally, on June 29, 2021, plaintiff filed its motion to reinstate and served notice of the motion on all defendants by mail and on Botham by email. Defendants did not hire counsel before the July 14 presentment of the motion, but waited until "a couple days" before the July 20 trial. Under these circumstances, the trial court did not abuse its discretion in denying defense counsel's oral motion for continuance on the day of trial.

¶ 24      Defendants claim the trial court acted improperly by "strongly suggest[ing]" that they obtain counsel at the July 14 hearing and then proceeding with trial on July 20 without giving their newly hired counsel time to prepare for trial. Because counsel was retained "a couple days" before trial, he lacked time to investigate the facts, take discovery, call witnesses, or conduct meaningful cross-examination of plaintiff's witness. However, it is well established that the appellant has the burden of presenting a sufficiently complete record to support its claims of error on appeal. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). "Absent a sufficient record, a reviewing court presumes that the trial court's order conformed to the law and had a sufficient factual basis." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 9. Since the record does not contain a transcript of the July 14 proceedings, we have no basis upon which to evaluate the merits of any errors that allegedly occurred on that date. Moreover, as discussed, defendants in the exercise of due diligence could have retained counsel prior to the July 14 presentment of plaintiff's motion to reinstate the action. Thus, defendants cannot overcome the presumption that that the trial court did not abuse its discretion in denying their oral motion for a continuance on the day of trial.

¶ 25      Additionally, "the denial of a request for continuance will not be grounds for reversal unless the complaining party has been prejudiced by such denial." *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999); see *Chicago City Bank & Trust Co. v. Pick*, 235 Ill. App. 3d 252, 255 (1992) (denial of continuance was not reversible error where appellant failed to establish prejudice). Even if defense counsel had been granted a continuance to investigate the facts, conduct discovery, and call witnesses, defendants do not allege any facts that would materially alter the outcome of the trial. Thus, any error in denying the continuance is harmless.

¶ 26     Defendants also argue that the trial court erred in overruling defense counsel's objections to plaintiff's trial exhibits on grounds that plaintiff did not provide defense counsel with copies prior to trial. We review the trial court's evidentiary rulings under an abuse of discretion standard. *Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13, 39 (2009). The record reflects that prior to trial, plaintiff sent copies of its trial exhibits to defendant, who could have forwarded them to counsel. Under these circumstances, we find no abuse of discretion in admitting the exhibits.

¶ 27                              Liquidated Damages

¶ 28     Defendants argue that the accelerated rent clause in the lease, purporting to grant plaintiff 27 months of future rent as liquidated damages, is against public policy and unenforceable as a matter of law.

¶ 29     Damages for breach of contract "are intended to place the nonbreaching party in the same position as if the contract had been performed." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶ 44. Although parties to a contract may agree in advance to "liquidated" damages as an estimate of the damages that might be sustained in the event of breach, "a liquidated damages clause which operates as a penalty for nonperformance or as a threat to secure performance will not be enforced." *Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 423 (2004); see also *Penske Truck Leasing Co., L.P. v. Chemetco, Inc.*, 311 Ill. App. 3d 447, 454 (2000) (" 'A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.' ") (quoting Restatement (Second) of Contracts § 356 (1979)). Such a clause is enforceable only if:

"(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of

contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." (Internal quotation marks omitted.) *Jameson*, 351 Ill. App. 3d at 423.

In determining whether actual damages would be uncertain in amount and difficult to prove, we look to "the time of contracting, not the time of breach." (Internal quotation marks omitted.) *Id.* The validity of a liquidated damages clause is an issue of law that we review *de novo*. *Id.*

¶ 30 The lease reflects that the parties agreed in advance to the settlement of damages that might arise from the breach. Section 20(A)(i) provides that if the tenant defaults and the landlord elects to terminate the lease,

"Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to: *** a sum equal to the amount of unpaid rent and other charges and adjustments called for herein for the balance of the term hereof, which sum shall be due to Landlord as damages by reason of Tenant's default hereunder."

Although the lease does not use the terms "accelerate" or "acceleration," it plainly states that the landlord "shall be entitled to recover *** a sum equal to the amount of unpaid rent *** for the balance of the term hereof."

¶ 31 However, under the circumstances of this case (*Penske*, 311 Ill. App. 3d at 454 (each liquidated damages clause "must be evaluated on its own facts and circumstances")), the amount of damages was not reasonable. The Third Lease Amendment, executed on November 15, 2016 and in effect at the time plaintiff filed this action, extended the lease term by five years from November 1, 2018 to October 31, 2023, thus awarding plaintiff up to five years of free rent in the event of breach. No evidence was presented at trial to indicate that the parties reasonably

contemplated it might take up to five years to relet the premises. There was no testimony regarding the rental market in Chicago at the time the lease extension was executed. Moreover, as defendants point out, the liquidated damages clause could result in a sizable windfall to plaintiff if it relets the property before the end of the lease term and collects double rent from defendants and its new tenant. Under these facts, the rent acceleration clause in section 20(A)(i) functions as a penalty for nonperformance, rather than the parties' attempt to estimate the damages resulting from defendants' breach.

¶ 32        The cases on which plaintiff relies are distinguishable. *Union Tank*, 2019 IL App (1st) 172858, did not involve a liquidated damages clause but evidence of actual damages sustained by plaintiff as a result of defendant's breach. Defendant breached a railcar lease contract. Based on testimony from plaintiff regarding the number of cars it had in storage and leased to customers, the trial court awarded plaintiff $97,215.90 in future storage costs for the railcars. *Id.* ¶¶ 14, 16. Here, plaintiff has presented no evidence to demonstrate that 27 months of future rent is a reasonable measure of its damages, or that the remainder of the lease term was a fair estimate of its damages at the time the lease was executed.

¶ 33        Although *Leahy Realty Corp. v. American Snack Foods Corp.*, 253 Ill. App. 3d 233, 244 (1993), and *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2022 IL App (1st) 210119, ¶ 33, both involved liquidated damage clauses in leases, the tenants in those cases did not challenge the validity and enforceability of those clauses. Moreover, the liquidated damages in *Leahy* consisted merely of the tenant's security deposit plus interest, while the damages in *Chopo Chicken* consisted of 10 months of future rent, substantially less than the 27 months of rent sought here.

¶ 34        Plaintiff lastly argues that the liquidated damages clause is reasonable in light of fluctuations in the rental market caused by the COVID-19 pandemic. The amount of liquidated

damages must be reasonable "at the time of contracting" (*Jameson*, 351 Ill. App. 3d at 423 (internal quotation marks omitted)). Clearly, COVID-19 was not in the parties' contemplation when they executed the Third Lease Amendment in 2016.

¶ 35    Accordingly, the liquidated damages clause in the lease is unenforceable as a matter of law, and the trial court's award of $173,502 in future rent to plaintiff must be reversed.

¶ 36                                  Mitigation of Damages

¶ 37    Defendants argue that plaintiff failed to prove mitigation of damages. We review the trial court's damage award under the manifest weight of the evidence standard (*1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13) meaning that we will affirm unless the opposite conclusion is apparent or the court's findings are unreasonable or arbitrary. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 59.

¶ 38    A landlord must take reasonable measures to mitigate its damages against a defaulting tenant. 735 ILCS 5/9-213.1 (West 2020); *St. George Chicago, Inc. v. George J. Murges & Assocs., Ltd.*, 296 Ill. App. 3d 285, 292-93 (1998). The landlord bears the burden of proving mitigation, and in the absence of such proof, it may not recover damages which could have been reasonably avoided. *St. George*, 296 Ill. App. 3d at 293. However, "no duty to mitigate arises on the part of a landlord until it comes into possession of the premises." *Chopo Chicken*, 2022 IL App (1st) 210119, ¶ 34. Here, Winkler testified that defendants were still in possession of the premises at the time of trial, and the court explicitly stated that it "found Mr. Winkler's testimony credible."

¶ 39    Defendants argue that the trial court improperly relied on the statement by plaintiff's counsel that "[the tenant's] stuff is still all over there, and she's got the keys, and the place is locked up." In a bench proceeding, we presume the court considered only competent evidence in

reaching its decision. *Habitat Co. v. McClure*, 301 Ill. App. 3d 425, 443 (1998). There is no indication in the record that the trial court relied on counsel's unsworn statement instead of Winkler's properly admitted testimony. Accordingly, the trial court's decision not to award a setoff for lack of mitigation was not against the manifest weight of the evidence.

¶ 40                                   Cost of Restoring the Premises

¶ 41          Defendants argue that plaintiff lacked foundation for its estimated $10,000 cost of restoring the premises, since there was no testimony regarding the state of the premises after being vacated by defendants.

¶ 42          Proof of damages must be made with admissible evidence showing a reasonable certainty of the amount claimed. *Santorini Cab Corporation v. Banco Popular*, 2013 Il App (1st) 122070, ¶¶ 18-19. Here, Winkler testified that he visited the premises a week before trial. Based on his experience in the construction business and his observation that the property contained shelving and equipment, was "painted all different colors," was "fairly dirty," and the floor was "not in good shape," he estimated that it would take $10,000 "to restore the premises to a vanilla box." He described in detail the work necessary for restoration:

> "[W]e go in and hire the necessary people to take out any alterations that have been done and then put the—patch and paint all the walls back to white, remove and replace the floor if necessary, get rid of any unnecessary electrical and plumbing, give them standard light fixtures, make sure all the doors are in good shape, the air conditioning is working, service all that. So there's a whole thing to get it in that nice sort of clean slate for a new tenant to take it over and do their concept."

¶ 43          Defendants argue that his testimony was insufficient to prove damages because Winkler's visit occurred a week before trial while defendants were still in possession of the premises, and

he did not testify regarding the state of the premises after defendants' departure. However, as noted, it was Winkler's uncontroverted testimony that defendants were still in possession as of the day of trial. Moreover, based on his experience in the construction industry, Winkler was entitled to estimate, and the trial court was entitled to find credible, the cost of restoring the premises after defendant left. The trial court's award of $10,000 for restoring the premises was not against the manifest weight of the evidence.

¶ 44                                                    CONCLUSION

¶ 45        For the foregoing reasons, we reverse that portion of the trial court's judgment granting plaintiff 27 months of future rent, totaling $173,502, in liquidated damages. We affirm the judgment in all other respects.

¶ 46        Affirmed in part and reversed in part.