In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 24-2731

CCP GOLDEN/7470 LLC, *et al.*,

*Plaintiffs-Appellees,*

*v.*

KEVIN BRESLIN,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-04081 — **Sara L. Ellis**, *Judge.*

---

ARGUED FEBRUARY 26, 2025 — DECIDED DECEMBER 3, 2025

---

Before ROVNER, SCUDDER, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* In this contract dispute, Plaintiffs leased four buildings to licensed skilled nursing facilities. Defendant Kevin Breslin and others guaranteed the nursing facilities' obligations under the leases. When the tenants breached their leases and a separate purchase-option agreement, Plaintiffs sued Breslin and his co-guarantors under the court's diversity jurisdiction to enforce the guaranties. Later, Plaintiffs discovered that one of the defendants' presence in

the suit destroyed complete diversity. They moved to dismiss him to keep the case in federal court. The district court granted the motion, which Breslin never contested. The parties then proceeded to summary judgment, where Breslin presented no evidence. Plaintiffs prevailed, and the district court awarded them nearly $22 million in damages.

Breslin appealed.[1] He argues the district court improperly dismissed his non-diverse former co-defendant—an indispensable party, in his view—and that the case must thus be dismissed for lack of subject matter jurisdiction. Alternatively, Breslin seeks reversal of the district court's grant of summary judgment on damages. We find our jurisdiction secure and affirm in part on damages, but reverse the district court's order as to two narrow categories of damages and remand accordingly.

## I. Background

In reviewing the district court's grant of summary judgment to Plaintiffs, we construe all facts and draw all justifiable inferences in the light most favorable to Breslin. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiffs are four property-specific limited liability companies that each owned real estate in Wisconsin. Breslin, through KBWB Operations, LLC, operated four licensed skilled nursing facilities on Plaintiffs' properties. Breslin's relationship with Plaintiffs was governed by two guaranties of the leases applicable to the four properties.

---

[1] Breslin is the lone appellant; his co-defendants have been dismissed, failed to appear, or had default judgments entered against them.

### A. Breslin's Guaranties

In June 2003, one of the Plaintiffs entered a lease with a tenant entity for its property in Chilton, Wisconsin. In August 2014, a limited liability company of which Breslin was a member purchased that tenant's equity. Plaintiffs consented to the purchase on the condition that Breslin and his co-defendants would jointly and severally guarantee the tenant's obligations under the lease. In December 2014, Breslin and his co-defendants executed the requested guaranty in Plaintiffs' favor (the "Chilton Individual Guaranty"), which unconditionally guaranteed payment of all amounts and the performance of all other obligations owed under the tenant's lease.

In a similar arrangement, the other three Plaintiffs' properties (in Appleton, Neenah, and Weston, Wisconsin) were governed by a master lease executed by those Plaintiffs and three property-specific tenant entities. In December 2015, Breslin and his co-defendants executed a guaranty of that lease in Plaintiffs' favor (the "Master Lease Individual Guaranty"). As before, Breslin and his co-defendants unconditionally guaranteed payment of all amounts and the performance of all other obligations owed under the master lease. And again, Breslin and his fellow guarantors were jointly and severally liable for performance of the guaranty.

### B. Tenants' Events of Default

Failure to make a minimum rent payment within five days of the due date constituted a default under the governing leases. The master-lease and Chilton tenants failed to pay rent beginning in August 2018 and September 2018, respectively. Thereafter, the tenants made no further payments and were in default.

In September 2018, an unrelated lender sued the tenants in Wisconsin state court for defaulting on loan payments. In response, the court appointed a receiver to operate the nursing facilities. The receiver relocated the facilities' residents, which caused the facilities to lose their licenses and operating permits. Because the leases required the tenants to continuously use and occupy the premises as skilled nursing facilities, that amounted to a separate event of default.

Meanwhile, both leases had granted the tenants the option to purchase the respective properties. In April 2017, before defaulting on the rent payments, the tenants had entered into an agreement to exercise those options (the "Purchase Option Exercise Agreement"). Under that agreement, the tenants agreed to pay Plaintiffs liquidated damages upon default (i.e., their failure to close). The parties classified the liquidated damages obligation as a monetary obligation of the tenants. Liquidated damages would be calculated as the earnest money deposit amounts provided for in the leases, less a $105,278 reduction for the master lease. In connection with the Purchase Option Exercise Agreement, Breslin and his co-guarantors reaffirmed the Master Lease Individual Guaranty and the Chilton Individual Guaranty, and they agreed to the liquidated damages obligation.

After extending the closing date to March 2019, the tenants failed to close on the purchase of the properties—an event of default that triggered the liquidated damages obligation. In December 2019, Plaintiffs sold the properties to an unrelated buyer for $1 million.

### C. District Court Proceedings

In July 2021, Plaintiffs sued Breslin, Breslin's limited liability company KBWB Operations, LLC, and Breslin's co-guarantors (all members of KBWB Operations) to enforce the Master Lease Individual and Chilton Individual Guaranties. Plaintiffs sought to recover millions of dollars in alleged losses.

### 1. *Diversity Jurisdiction*

In their July 2021 complaint, Plaintiffs alleged that the defendant-guarantors were each citizens of New York or New Jersey. Plaintiffs themselves are Delaware limited liability companies, each with the same Delaware-organized entity—Sabra Health Care Limited Partnership—as its sole member. Sabra's general partner is Sabra Health Care REIT, Inc. ("Sabra REIT"), a Maryland corporation with its principal place of business in California; its limited partner is a Delaware limited liability company whose sole member is Sabra REIT. So, Plaintiffs are deemed citizens of both Maryland and California for purposes of diversity jurisdiction. *See Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022) (limited liability companies and limited partnerships are deemed citizens of every state in which their members or partners are citizens).

In January 2022, Plaintiffs moved to dismiss one of Breslin's co-guarantors, William G. Burris III, under Federal Rule of Civil Procedure 21. When drafting the complaint, Plaintiffs believed that Burris III resided with his father William G. Burris Jr. (another defendant) in New Jersey. But when serving the complaint, they learned that Burris III was a California citizen. Since Plaintiffs were also California citizens, Burris III's presence in the suit destroyed complete diversity. To preserve

federal jurisdiction, Plaintiffs sought to dismiss Burris III. They contended he was not a necessary and indispensable party because the executed guaranties provided that each individual guarantor was jointly and severally responsible for all obligations under the agreements. Breslin did not oppose the motion. The district court granted the motion and dismissed Burris III, permitting the suit to remain in federal court.

## 2.  *Liability and Damages*

After discovery, Plaintiffs moved for summary judgment on liability and damages. Plaintiffs sought nearly $22 million in damages for unpaid rent, accelerated rent due through the end of the leases, the premises' lost value, real estate taxes, late fees, utilities and maintenance costs, and liquidated damages under the Purchase Option Exercise Agreement.

Breslin did not specifically contest his liability for breach of the guaranties. Rather, he opposed Plaintiffs' motion for summary judgment under Rule 56(d), arguing that he was under criminal indictment and could not effectively defend himself without compromising his right against self-incrimination.[2] He invoked his Fifth Amendment privilege in response to the entirety of Plaintiffs' Rule 56.1 statement. He otherwise

---

[2] Breslin has since pled guilty to health care fraud and conspiracy to commit an offense against the United States, violations of 18 U.S.C. §§ 1347 and 371, in connection with his operation of skilled nursing and assisted living facilities. *See United States v. Breslin*, No. 3:23-cr-00010 (W.D. Wis.). He was sentenced to 90 months' imprisonment and three years' supervised release, plus over $146 million in restitution and $8 million in forfeiture, and has appealed his sentence to this court.

argued without evidence that Plaintiffs failed to fully mitigate their damages.

The district court rejected Breslin's Rule 56(d) request and granted Plaintiffs' motion for summary judgment. It awarded Plaintiffs $21,941,829.35 in total damages: (1) $7,324,881.59 in unpaid rent; (2) $10,305,302.24 in lost value of the premises; (3) $340,811.85 in real estate and property taxes; (4) $1,098,670.93 in liquidated damages for failure to close on the purchase option; (5) $2,611,938.17 in late fees and interest; and (6) $260,224.57 in utility and maintenance costs.

Breslin appealed. He argues the district court lacked jurisdiction because Burris III was a necessary and indispensable party under Rule 19. On the merits, he does not dispute liability but challenges the district court's damages calculations.

## II. Discussion

We start, as we must, with jurisdiction. Finding jurisdiction secure, we then turn to the district court's damages determination.

### A. Mandatory Joinder

We address Breslin's mandatory joinder argument first, as it implicates our jurisdiction.[3] *Page v. Democratic Nat'l Comm.*,

---

[3] Plaintiffs argue that Breslin waived his mandatory joinder argument in failing to oppose their motion to voluntarily dismiss Burris III, meaning that it was never presented to the district court. But if Burris III is a necessary and indispensable party, the district court lacked subject matter jurisdiction, and jurisdictional issues of this nature generally may be presented for the first time on appeal. *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 225 (7th Cir. 1981); *cf. Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) (holding, in a case involving the *failure* to join an allegedly indispensable party, that "[a] court with proper jurisdiction may also

2 F.4th 630, 634 (7th Cir. 2021). Federal diversity jurisdiction requires that no plaintiff be a citizen of the same state as any defendant. *Id.* at 636; *see* 28 U.S.C. § 1332(a)(1). We ordinarily assess this complete-diversity requirement as of the time the complaint is filed. *Perez v. Staples Contract & Com. LLC*, 31 F.4th 560, 567 (7th Cir. 2022). But the district court may later cure jurisdictional defects by dismissing nondiverse parties "if their interests are severable and a decree without prejudice to their rights may be made" should the action continue in their absence. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572 (2004) (citing *Horn v. Lockhart*, 84 U.S. 570, 579 (1873)).

There is no dispute that California citizen Burris III's presence in the suit destroyed complete diversity. Whether the district court rightly dismissed him under Rule 21 to preserve subject matter jurisdiction turns on whether—as Breslin contends—Burris III was indispensable under Rule 19.[4] *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). Rule 19's purpose is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (internal quotation omitted). If Burris III was indispensable, the parties may not litigate this

---

consider *sua sponte* the absence of a required person and dismiss for failure to join").

[4] We have repeatedly left open whether joinder determinations under Rule 19 are reviewed *de novo* or for abuse of discretion. *See In re Veluchamy*, 879 F.3d 808, 819 (7th Cir. 2018) (collecting cases). We do so again today, as the result here would not differ under either standard. And Breslin does not raise any factual disputes about Burris III's citizenship that would be subject to clear-error review. *Id*.

controversy in his absence, and we must dismiss for lack of subject matter jurisdiction.

The Rule 19 analysis has two steps: (1) whether Burris III is a "necessary" party who "should be joined if feasible" under Rule 19(a); and (2) if so, whether "there is no way to structure a judgment" in his absence "that will protect both [his] own rights and the rights of the existing litigants," making him "indispensable" under Rule 19(b) and rendering the action "subject to dismissal upon a proper motion[.]" *Thomas*, 189 F.3d at 667.

As an initial matter, we are doubtful Burris III would even qualify as a necessary party under Rule 19(a), whether his presence destroyed complete diversity or not. Since Burris III was jointly and severally liable with his co-obligors, complete relief could be granted to Plaintiffs in his absence. *See* Fed. R. Civ. P. 19(a)(1)(A); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). And disposing of the action in Plaintiffs' favor would not necessarily impair or impede Burris III's ability to protect his interest.[5] *See* Fed. R. Civ. P. 19(a)(1)(B)(i). As an absent party, he had no "full and fair opportunity to litigate" the case, and we cannot see how he would be bound by a judgment against Breslin as a matter of

---

[5] Breslin does not contend that Burris III's absence would create the risk of "inconsistent obligations" under Rule 19(a)(1)(B)(ii); nor could he, as the co-guarantors' liability is joint and several. *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980).

collateral estoppel.[6] *People v. Pawlaczyk*, 189 Ill. 2d 177, 189 (2000); *see Janney*, 11 F.3d at 409–10.

Breslin argues otherwise based on the specific language of the Guaranties, which make all co-guarantors "conclusively bound" by any judgment in Plaintiffs' favor regardless of whether they were "entered as a party or participate[d] in such Action." But this language does not in and of itself carry the force of a binding judgment; it would merely provide an additional contractual remedy against Burris III in a separate action, which he would have the opportunity to litigate. *Cf. Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) (analyzing the prejudicial effect of an "unfavorable judgment" under Rule 19).

We need not, however, definitively reach the question of whether Burris III is a necessary party under Rule 19(a). For even assuming he was, he would not be indispensable under Rule 19(b). Rule 19(b) lists four factors to consider in determining indispensability: (1) the prejudice a judgment in the person's absence might cause; (2) the extent to which that prejudice could be lessened through the relief awarded; (3) the adequacy of such a judgment; and (4) whether the plaintiff would have an adequate remedy if the case were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

The Supreme Court has made clear that these factors do not render jointly and severally liable co-guarantors indispensable and that they may be dismissed to preserve jurisdiction. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989)

---

[6] A court would apply the law of the forum state—here, Illinois—to determine the preclusive effect of the federal-court judgment in this diversity case. *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008).

("[G]iven that all of the guarantors (including [the party to be dismissed]) are jointly and severally liable, it cannot be argued that [that party] was indispensable to the suit."); *see also Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 452–53 (7th Cir. 1977). Our sister circuits, too, have held that co-obligors under a contract "are not indispensable parties in contract disputes that do not … challenge the validity of the contract" as a whole, which no party does here. *In re Olympic Mills Corp.*, 477 F.3d 1, 10 (1st Cir. 2007) (collecting cases).

A contrary rule would render contractual joint and several liability largely irrelevant. Where parties have agreed to share responsibilities for damages, "[a] victim of wrongdoing is not generally required to sue all the wrongdoers" to obtain relief, in contract as in tort. *Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1613 (3d ed. Sept. 2025 update) ("Today the joinder of obligors is left to plaintiff's discretion by many courts and plaintiff may select defendants without being concerned about dismissal because of nonjoinder."). And whatever hypothetical prejudice Burris III might suffer from a future action against him, "the prospect of later litigation … is not sufficiently significant to make [him] an indispensable party" under these circumstances. *Pasco*, 637 F.2d at 505. Rather, we should be "reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum." *Askew v. Sheriff of Cook County*, 568 F.3d 632, 634 (7th Cir. 2009) (citing *Davis Cos.*, 268 F.3d at 481).

Breslin advocates for a bright-line rule that parties to a contract are indispensable to suits on the contract. True, we observed in *Davis Companies* that "a contracting party is the paradigm of an indispensable party." 268 F.3d at 484. But

Breslin's maximalist reading of one line from *Davis Companies*—which he reads to imply that *all* contracting parties are *by definition* necessary and indispensable—is unfounded in our precedent, which calls for a case-specific inquiry. *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968) (under Rule 19, "[w]hether a person is 'indispensable' … can only be determined in the context of particular litigation"); *Bio–Analytical*, 565 F.2d at 452 ("Generally, Rule 19 entails a pragmatic approach, focusing on realistic analysis of the facts of each case."); *see also Est. of Plott v. Dep't of Health & Hum. Servs.*, 151 F.4th 848, 854 (6th Cir. 2025) ("Because district courts must conduct a Rule 19 analysis on a case-by-case basis, a party to a contract is not per se necessary and indispensable to litigation involving that contract.").

Moreover, that sweeping statement from *Davis Companies* was *dicta* since the party at issue in that case was *not* a contracting party. 268 F.3d at 484. And it was quoted from a different case even further afield from the facts here, considering the total rescission of the contracts at issue. *See United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) (deciding whether a tribe was indispensable to a *qui tam* suit seeking to void contracts between the tribe and gaming-related vendors under federal statutes). It thus has little relevance to this action, in which Plaintiffs seek not to set aside the Guaranties but to enforce them. And of course, *Davis Companies* must also be read against our earlier and more specific holdings—and the Supreme Court's in *Newman-Green*—that joint and severally liable guarantors are *not* indispensable under Rule 19(b). *Bio-Analytical*, 565 F.2d at 453; *Newman-Green*, 490 U.S. at 838.

Because Burris III was not indispensable to the litigation, the district court did not err in dismissing him to maintain diversity jurisdiction over the suit. With jurisdiction secure, we turn to Breslin's appeal of the district court's judgment as to damages.

## B. Damages

Although Breslin does not contest liability on appeal, he argues that the district court's damages award was erroneous. In his view, Plaintiffs failed to mitigate their losses, and their requested damages were improper, speculative, and punitive. We note at the outset that Breslin did not put up much of a fight on damages before the district court. He did not dispute Plaintiffs' facts about damages in his responses to their Rule 56.1 statement, instead refusing to answer based on his Fifth Amendment privilege. He did not offer any alternative damages calculations. Nor did he provide any contrary evidence. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (summary judgment is the "'put up or shut up' moment in litigation" in which "the non-moving party is required to marshal and present the court with the evidence []he contends will prove h[is] case").

That alone does not resolve this appeal, though: we must still confirm that Plaintiffs' evidence entitles them to judgment as a matter of law. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391–92 (7th Cir. 1995). In doing so, we review summary judgment issues and the damage-computation methodology *de novo* but review the award amount only for clear error. *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 727 (7th Cir. 2010).

In this diversity suit, we apply the damages rules of Illinois—the state whose law governs the substantive issues in the case. *See Arpin v. United States*, 521 F.3d 769, 776 (7th Cir. 2008). Under Illinois law, "[t]he party seeking damages must prove its damages to a reasonable degree of certainty, and accordingly the evidence it presents must not be remote, speculative, or uncertain." *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 485 (1st Dist. 2010). Damages determinations do not require absolute certainty; "all that the law requires is that there be an adequate basis in the record for the court's determination." *First Nat. Bank & Tr. Co. of Evanston v. J.P. Schermerhorn & Co.*, 192 Ill. App. 3d 1057, 1062 (1st Dist. 1989).

We conclude that there is an adequate basis in the record supporting Plaintiffs' mitigation efforts and diminution-in-value damages. But we must vacate the district court's determination of Plaintiffs' accelerated-rent damages under the leases and their liquidated damages under the Purchase Option Exercise Agreement, as discussed below. We note, in doing so, that the district court faced a challenging and unique set of questions and tackled these with little help from Breslin.

### 1. Failure to Mitigate

Under Illinois law, "[a] party being damaged cannot stand idly by and allow the injury to continue and increase without making reasonable efforts to avoid further loss." *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione*, 144 Ill. App. 3d 934, 941 (1st Dist. 1986).[7] To support their mitigation efforts,

---

[7] The Guaranties each include a waiver-of-defenses clause that might be construed to waive Breslin's failure-to-mitigate defense. *See WEC 98C-3 LLC v. SFA Holdings Inc.*, 99 F.4th 961, 969 (7th Cir.) (construing the plain

Plaintiffs submitted a sworn declaration from their parent company's Executive Vice President of Asset Management and a deal tracker spreadsheet outlining their attempts to sell the properties.[8] These submissions—unrebutted by Breslin—show that Plaintiffs made reasonable efforts to mitigate their damages.

The declaration and deal tracker detail how, in October 2018, Plaintiffs engaged a marketing agent and broker to assist them in reletting or selling the properties occupied by the nursing facilities. They establish that from October 2018 to March 2019, Plaintiffs' agent prepared an offering memorandum, worked on underwriting, marketed the facilities to over a hundred prospects, and (after those efforts proved unsuccessful) identified a local real estate agent to market the properties. After the nursing facilities lost their licenses, Plaintiffs accepted the best available offer. These measures provide ample support for the district court's finding that Plaintiffs mitigated their damages.

---

language of a guaranty and finding that a party waived the right to assert any defenses), *cert. denied sub nom. SFA Holdings, Inc. v. 4 Stratford Square Mall Holdings, LLC*, 145 S. Ct. 287 (2024); *Takiff Props. Grp. Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶¶ 25–29 (enforcing a contractual provision waiving a statutory defense). But Plaintiffs never made this argument before the district court, and given the evidence of mitigation, we see no reason to resolve this issue.

[8] While "a party's affidavit can serve as a vehicle for introducing facts at summary judgment, the party cannot rest upon conclusory statements in affidavits; [it] must go beyond the pleadings and support [its] contentions with proper documentary evidence." *FTC v. Day Pacer LLC,* 125 F.4th 791, 802–03 (7th Cir. 2025) (internal citation and quotation omitted). Here there is no issue: Plaintiffs' deal tracker supports the declaration.

### 2.  *Diminution in Value*

The district court awarded $10,305,302.24 for diminution in value, and we find no error in either its methodology or computation. "Damages for breach of contract are intended to place the nonbreaching party in the same position as if the contract had been performed." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶ 44. Here, the leases required the tenants to maintain the properties in good condition and continue to operate them as nursing facilities. But as a result of their breach, the value of Plaintiffs' properties was foreseeably diminished by the nursing facilities' loss of their operating licenses after being placed into receivership. Plaintiffs were thus entitled to seek damages placing them in the financial position they would have attained at the conclusion of the lease terms but for those events of default. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 318 (1987) ("[A]ll damages which naturally and generally result from a breach are recoverable[.]").

Breslin avers that Plaintiffs failed to prove their damages to a reasonable degree of certainty. We disagree. To determine the diminution in value, the district court relied on Plaintiffs' calculation of the annual amount for which the properties could be leased by operators of skilled nursing facilities, divided by a 9.5% capitalization rate. The district court then applied an 8% discount rate to that figure to determine the net present value of the premises, subtracted the $1 million Plaintiffs received when the properties sold, and added in the costs they were forced to pay in connection with the sale to arrive at the $10,305,302.24 diminution-in-value amount.

Breslin does not dispute that Plaintiffs are entitled to their expectation damages, nor does he challenge the various rates

used in their damages calculation. And he failed to offer any evidence undermining the district court's determination of Plaintiffs' damages. Absent any contrary evidence that this award is improper, we affirm. *Hanover Ins. Co. v. N. Building Co.*, 751 F.3d 788, 795 (7th Cir. 2014).

### 3. *Accelerated Rent*

The district court awarded $7,324,881.59 in unpaid rent under the Guaranties: $1,528,614.55 in unpaid rent through December 2019 (when Plaintiffs sold the nursing facilities) and $5,796,267.04 in accelerated rent through January 2026 (the anticipated lease term). Breslin now argues that the accelerated-rent portion of this award operates as an impermissible penalty.

Illinois does not recognize a common-law right to future rent in the event of a breach, unless the parties have agreed as much through a rent-acceleration clause. *Union Tank*, 2019 IL App (1st) 172858, ¶ 44. Where these clauses appear—as they do in both leases at issue in this case—they are usually treated as a form of liquidated damages. *See, e.g.*, *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2022 IL App (1st) 210119, ¶¶ 29, 33; *Slyce Coal Fired Pizza Co. v. Metro. Square Plaza, LLC*, 2025 IL App (1st) 221279, ¶ 184; *see also Baird & Warner Residential Sales, Inc. v. RXHST Naperville, LLC*, 2025 WL 2044017, at *4 (N.D. Ill. July 21, 2025) (applying Illinois law).[9] Under Illinois

---

[9] We note that both *Slyce Coal Fired Pizza Co.* and *Baird & Warner Residential Sales* were decided after the district court issued its decision below, as well as the close of briefing and argument in this appeal. Neither party submitted a notice of supplemental authority under Federal Rule of Appellate Procedure 28(j) on these cases; in any event, they are persuasive but not controlling as to our ultimate decision here.

law, liquidated-damages clauses are only valid where "(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages that might occur; and (3) actual damages would be uncertain in amount and difficult to prove." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020) (citing *Karimi v. 401 N. Wabash Venture*, 2011 IL App (1st) 102670, ¶ 16).

We do not question that some amount of damages to compensate Plaintiffs for forgone rent is appropriate. As discussed above, Plaintiffs should be placed in the position they would have been had there been no breach. The diminution-of-value award does not account for the additional lost rent over the lease term; but for the breach, Plaintiffs could have rented the properties through January 2026 *and* subsequently sold them for a higher value. Plaintiffs also applied an 8% discount to their accelerated rent calculation to reduce it to present value, and Breslin offers nothing to suggest this method is inappropriate.

Rather, Breslin contends that accelerated-rent clauses must also offset the fair rental value of the premises to avoid giving Plaintiffs a double recovery by collecting both accelerated rent and a new tenant's rent. *See Slyce Coal Fired Pizza*, 2025 IL App (1st) 221279, ¶ 185 (citing *2336 North Clark, LLC v. Hair Fairies, Inc.*, 2022 IL App (1st) 211597-U). Plaintiffs retort that there was, in fact, no such double recovery here: they were unable to relet the properties and ultimately sold them at a substantial loss well before the end of the lease term. But under Illinois law, whether a contractual damages term operates as a penalty turns on the reasonableness of the term "at

the time of contracting," not after the fact. *Karimi*, 2011 IL App (1st) 102670, ¶ 24.

Here, one of the two leases—the master lease—accounted for a potential offset, discounting any accelerated rent by "any net amounts that Landlord has received that mitigate Landlord's damages." This clause was enforceable: it reflected the parties' intent, appropriately predicted Plaintiffs' likely damages at the time of contracting, and accounted for the likelihood that Plaintiffs' actual damages "from lost future rent in the event [the tenants] breached the lease … would be uncertain and difficult to prove." *Slyce Coal Fired Pizza Co.*, 2025 IL App (1st) 221279, ¶ 179.

But the other lease—the Chilton lease—had no such offset provision, providing only that "Landlord … [may] collect … the acceleration of all minimum rent which would have accrued after [the lease's] termination" upon any "Event of Default[.]" It is not clear, therefore, that this term reasonably anticipated the applicable Plaintiff's potential damages at the time of contracting.

Recently, Illinois courts appear to have reached conflicting results on whether accelerated-rent clauses *must* include this offset language to be enforceable as a matter of law. *Compare Slyce Coal Fired Pizza*, 2025 IL App (1st) 221279, ¶ 185 ("[A] provision … that demands payment of *all* remaining rent for the remainder of the lease term, without accounting for the landlord's ability to relet the premises … is a penalty."), *with Chopo Chicken*, 2022 IL App (1st) 210119, ¶¶ 29, 33 (finding accelerated-rent clause without any offset language enforceable).

Here, however, there is simply no evidence suggesting that the parties reasonably contemplated Plaintiffs might be unable to relet the Chilton premises for the entire remaining lease term as a result of any breach, however minor, when entering into their agreement. *See GK Dev., Inc. v. Iowa Malls Fin. Corp.*, 2013 IL App (1st) 112802, ¶ 54 (liquidated-damages clause for "entire, present-day value of 20-year lease" was not "reasonable prediction of damages" from delay in obtaining permits); *Hair Fairies*, 2022 IL App (1st) 211597-U, ¶ 31; *cf. Penske Truck Leasing Co., L.P. v. Chemetco, Inc.*, 311 Ill. App. 3d 447, 455–56 (5th Dist. 2000) (finding liquidated-damages clause enforceable after concluding that damages formula reasonably approximated actual costs of breach).

Absent such evidence, we must vacate the portion of the accelerated-rent damages award attributable to the Chilton lease and remand to the district court for further consideration of whether that lease's accelerated-rent clause was a reasonable prediction of Plaintiffs' damages at the time of contracting or an unenforceable penalty. While we are unsure what further evidence or argument the parties might submit, we leave it to the district court's discretion whether to hold additional proceedings on this issue or simply recalculate the final damages figure with the Chilton lease's accelerated rent excluded.

### 4.  *Liquidated Damages for Breach of Purchase Option*

Finally, the district court awarded Plaintiffs $1,098,670.93 in liquidated damages arising from the tenants' breach of the Purchase Option Exercise Agreement for the facilities. Again, liquidated damages are valid if the parties agreed to them in advance, they reasonably forecast the anticipated costs of breach, and actual damages would be "uncertain in amount

and difficult to prove." *Smart Oil*, 970 F.3d at 863 (citing *Karimi*, 2011 IL App (1st) 102670, ¶ 16). A clause that is unable to pass this test is an unenforceable penalty. *Id.*

Liquidated damages for breach of a real estate purchase agreement are meant to serve as a substitute, not a supplement, to actual damages arising from the same breach.[10] *Morris v. Flores*, 174 Ill. App. 3d 504, 506 (2d Dist. 1988) ("It would be inconsistent to provide in the contract for liquidated damages and also allow a party to pursue other remedies for money damages."). And as discussed above, several of Plaintiffs' other categories of compensatory damages—in particular, Plaintiffs' diminution-in-value damages from selling the premises at a loss—are far from uncertain and (as this litigation has shown) relatively easy to prove. Since "a determination of actual damages in the event of breach of contract would not [have been] difficult" at the time of contracting, and such a determination was in fact made here, we find the purchase-option liquidated-damages clause unenforceable as a matter of law. *Hickox v. Bell*, 195 Ill. App. 3d 976, 988 (5th Dist. 1990). Thus, we reverse the district court's liquidated-damages award arising from the Purchase Option Exercise Agreement.

### III. Conclusion

For the reasons discussed herein, we VACATE the district court's award of $7,324,881.59 in unpaid minimum rent and $1,098,670.93 in liquidated damages, and REMAND for proceedings consistent with this order. We stress that the scope of this remand is narrow and limited solely to (1) revisiting

---

[10] Plaintiffs' counsel, to his credit, largely agreed with that assessment at oral argument. Oral Argument at 24:57–25:10.

the component of the accelerated-rent damages attributable to the Chilton lease, and (2) eliminating the liquidated damages from the Purchase Option Exercise Agreement. In all other aspects, the district court's judgment is AFFIRMED.